# EXHIBIT D

1 | LAW OFFICES OF SETH W. WIENER
2 |
3 | Seth W. Wiener
California State Bar No. 203747
609 Karina Court
4 | San Ramon, California 94582
Telephone: (925) 487-5607
5 | Email: seth@sethwienerlaw.com
6 |
7 | DEVLIN LAW FIRM LLC
8 | Timothy Devlin (*pro hac vice* to be filed)
tdevlin@devlinlawfirm.com
9 | Patrick R. Delaney (*pro hac vice* to be filed)
pdelaney@devlinlawfirm.com
10 | 1526 Gilpin Avenue
Wilmington, Delaware 19806
11 | Telephone: (302) 449-9010
12 | Fax: (302) 353-4251
13 | *Attorneys for Plaintiff,
Princeps Interface Technologies LLC*
14 |
15 |
16 | **IN THE UNITED STATES DISTRICT COURT**
17 | **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
18 |
19 | **PRINCEPS INTERFACE TECHNOLOGIES LLC,**  ) Case No. 4:19-cv-4298
)
20 | **Plaintiff,**  ) **COMPLAINT FOR PATENT INFRINGEMENT**
)
21 | v.  )
) **DEMAND FOR JURY TRIAL**
22 | **ASUSTEK COMPUTER INC.; and ASUS COMPUTER INTERNATIONAL**  )
23 | )
)
24 | **Defendants.**  )
)
25 |
26 |
27 |
28 |

COMPLAINT FOR PATENT INFRINGEMENT

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Princeps Interface Technologies LLC ("Princeps" or "Plaintiff"), for its Complaint against AsusTeK Computer Inc. ("ATC") and Asus Computer International ("ACI"), (collectively "Asus" or "Defendants"), alleges the following.

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

**THE PARTIES**

2. Plaintiff Princeps is a limited liability company organized under the laws of the State of Delaware with a place of business at Princeps Interface Technologies LLC, c/o Kustal and Kustal, P.C., 261 West 35th Street, Suite No. 1003, New York, New York 10001.

3. AsusTeK Computer, Inc. ("ATC") is a foreign corporation organized and existing under the laws of Taiwan, with its principal place of business at No. 15, Li-Te Rd., Beitou District, Taipei 112, Taiwan, R.O.C. ATC produces and sells telecommunications, electronics and mobile phone technologies worldwide, including in the United States.

4. Asus Computer International ("ACI") is a corporation organized and existing under the laws of California, with its principal place of business located at 800 Corporate Way, Fremont, California 94539. Defendant ACI is a subsidiary of or otherwise controlled by ATC. Defendant ACI may be served through its registered agent for service of process – CT Corporation System, 818 West Seventh Street, Suite 930, Los Angeles, CA 90017. ACI manufactures, supplies and sells consumer electronics and products throughout the United States including in this District. In addition to its registered agent, on information and belief, ACI and/or ATC have other regular and established places of business in this District including authorized service centers (See source: https://www.service-center-locator.com/asus/asus-service-center.htm last accessed and downloaded on July 26, 2019.) ("ASUS SERVICE CENTER CALIFORNIA").

5. ACI is a subsidiary of ATC. Defendants ACI and ATC act in concert regarding the allegations set forth in this Complaint and, therefore, the conduct described herein is fairly

COMPLAINT FOR PATENT INFRINGEMENT

1

attributable to either or both entities. More specifically, Defendants work collectively in the designing, manufacturing, importing, distributing and selling of the Accused Instrumentalities described in more detail below and in the attached claim chart.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7. Venue with respect to Defendant ATC is proper in this District under 28 U.S.C. § 1391(c)(3) because, upon information and belief, Defendant ATC is not a resident of the United States, and also under 28 U.S.C. § 1391(b)(2) because ATC sells and offers to sell products and services throughout the United States, including in this District, and introduces products and services into the stream of commerce and effectuates these sales knowing that the products and services would be sold in this District and elsewhere in the United States.

8. This Court has personal jurisdiction over ATC. ATC is amenable to service of summons for this action. Defendant ATC has sought protection and benefit from the laws of the State of California by maintaining one of its United States affiliates (Defendant ACI) in this District and/or by placing infringing products into the stream of commerce through an established distribution channel with the awareness and/or intent that they will be purchased by consumers in this District.

9. ATC – directly or through intermediaries (including distributors, retailers, and others), subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, and/or sells its products in the United States and this District. ATC has purposefully and voluntarily placed one or more of its infringing products into the stream of commerce with the awareness and/or intent that they will be purchased by consumers in this District. ATC knowingly and purposefully ships infringing products into and within this District through an established distribution channel. These infringing products have been and continue to be purchased by consumers in this District. Upon information and belief, through those activities, ATC has committed the tort of patent infringement in this District.

10. On information and belief, Defendant ATC is subject to this Court's general and specific personal jurisdiction because ATC has sufficient minimum contacts within California

COMPLAINT FOR PATENT INFRINGEMENT

2

1 and this District, because Defendant ATC purposefully availed itself of the privileges of
2 conducting business in California and in this District, because Defendant ATC regularly
3 conducts and solicits business within California and within this District, and because Plaintiff's
4 causes of action arise directly from Defendant ATC's business contacts and other activities in
5 California and this District. Having purposefully availed itself of the privilege of conducting
6 business within this District, Defendant ATC should reasonably and fairly anticipate being
7 brought into court here.

8     11. Venue with respect to Defendant ACI is proper in this District under 28 U.S.C. §
9 1400(b) because ACI is a California corporation and therefore resides in this District.

10     12. This Court has personal jurisdiction over ACI. ACI has conducted and regularly
11 conducts business within the United States and this District. ACI has purposefully availed itself
12 of the privileges of conducting business in the United States, and more specifically in California
13 and this District. ACI has sought protection and benefit from the laws of California by
14 incorporating itself in this District and/or by placing infringing products into the stream of
15 commerce through an established distribution channel with the awareness and/or intent that they
16 will be purchased by consumers in this District.

17     13. ACI – directly or through intermediaries (including distributors, retailers, and
18 others), subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, and/or sells its
19 products in the United States and this District. ACI has purposefully and voluntarily placed one
20 or more of its infringing products into the stream of commerce with the awareness and/or intent
21 that they will be purchased by consumers in this District. ACI knowingly and purposefully ships
22 infringing products into and within this District through an established distribution channel.
23 These infringing products have been and continue to be purchased by consumers in this District.
24 Upon information and belief, through those activities, ACI has committed the tort of patent
25 infringement in this District.

26     14. On information and belief, Defendant ACI is subject to this Court's general and
27 specific personal jurisdiction because ACI has sufficient minimum contacts within California
28 and this District, because Defendant ACI purposefully availed itself of the privileges of

COMPLAINT FOR PATENT INFRINGEMENT

3

conducting business in California and in this District, because Defendant ACI regularly conducts and solicits business within California and within this District, and because Plaintiff's causes of action arise directly from Defendant ACI's business contacts and other activities in California and this District. Having purposefully availed itself of the privilege of conducting business within this District, Defendant ACI should reasonably and fairly anticipate being brought into court here.

## BACKGROUND

### The Inventions

15. Timothy B. Higginson is the sole inventor (hereinafter "the Inventor") of U.S. Patent No. 6,703,963 ("the '963 patent" or "the patent in suit"). A true and correct copy of the '963 patent is attached hereto as Exhibit A.

16. The '963 patent resulted from the pioneering efforts of the Inventor in the area of small-profile multifunctional input devices. These efforts resulted in the development of novel input devices, and methods for operating them. The input devices utilize one or more functional modes and one or more domain levels associated with entering input values into the devices. A provisional patent application directed to the inventions was filed in the United States in September 2001.

17. At the time of the Inventor's pioneering efforts, the most widely implemented technology used to address keying input data still involved implementing variants of the traditional two-handed QWERTY keyboard. In that type of system, as explained in the '963 patent:

> The QWERTY keyboard has been used as an input means since the development of the very first electronic devices. However, with the development of smaller, portable electronic devices, use of the QWERTY keyboard with these devices has certain drawbacks. As electronic devices have become smaller through advances in integrated circuitry, the traditional QWERTY keyboard is simply too large for many of the smaller electronic devices as the keyboard must be large enough to accommodate both hands of the user. Moreover, due the large size of the traditional keyboard, it is not sufficiently portable for use in conjunction with many of these electronic devices.
>
> Previous attempts to overcome this short coming of the keyboard have included the use of foldable keyboards as shown in U.S. Pat. No. 6,174,097 and the use of keyboards that allow for the direct connection of the electronic device to a full-size portable QWERTY keyboard as shown in U.S. Pat. No. 6,108,200. However, neither of

COMPLAINT FOR PATENT INFRINGEMENT
4

these approaches reduces the area required for the use of the keyboard.

…An additional drawback to the QWERTY keyboard is that it was designed to accommodate the mechanical components of the first typewriters, as such, the layout of its keys does not facilitate the rapid input of data from the keyboard.

…Another drawback to the traditional QWERTY keyboard is that it has typically only had a single functionality, namely alphanumeric input. However, with the decrease in size of many of electronic devices, additional functions are required from a smaller keyboard that current keyboards cannot accommodate.

(*See* Exhibit A, '963 patent at 1:37 to 2:23.)[1]

18. The Inventor conceived of the inventions claimed in the '963 patent as a way to address the aforementioned drawbacks of the prior art. As explained in the '963 patent:

The miniaturization of many electronic devices has allowed them to be designed such that they can be operated with only a single hand of the user or has made their use incompatible with a full-sized QWERTY keyboard. Because the QWERTY keyboard was developed for two-handed use with the original typewriter, it cannot be readily adapted for efficient use by only a single hand, or one or both thumbs when used in conjunction with many electronic devices.

…Previous attempts to increase the speed and efficiency of data input into an electronic device have included the development and use of voice-recognition software. However, the error rate typically associated with this type of software has thus far prevented its large-scale use as an effective input device.

…Previous attempts to overcome shortcomings of the QWERTY keyboard have included the use of alternative keyboards, such as the standard 12-key arrangement found on most telephone and cellular phones. A drawback of using the standard telephone as a data-input device is the slow rate of input due to use of only a single finger or thumb to activate the keys.

(*See* Exhibit A, '963 patent at 1:56 to 2:30.)

The present invention provides a multifunctional input device. The input device includes a functional mode which defines the mode of operation of the input device. Each functional mode includes one or more domain levels with each domain level containing one or more domain-level values. Each domain level-value within each functional mode is assigned to one of a plurality of programmable input keys. The domain-level value assigned to each input key controls the function of that input key within a given functionality and domain level. The present invention also includes a display to indicate the domain-level value associated with each of the programmable input keys within a given functionality.

---

[1] Citations to patents in this Complaint refer to columns and lines within columns of any cited patent. For example, the citation referenced by this footnote refers to column 1, at line 37 through column 2, at line 23 in the '963 patent.

COMPLAINT FOR PATENT INFRINGEMENT

5

(*See* Exhibit A, '963 patent at 2:33-45.)

**Technological Innovation**

19. The patented inventions disclosed in the '963 patent resolve technical problems related to data input devices, and particularly, to problems related to the utilization of small-profile data input devices. As the patent explains, there are several limitations of the prior art as regards full-sized QWERTY keyboards in that:

> [T]he keyboard must be large enough to accommodate both hands of the user. Moreover, due the large size of the traditional keyboard, it is not sufficiently portable for use in conjunction with many of these electronic devices.

('963 patent at 1:40-48.)

> The miniaturization of many electronic devices has allowed them to be designed such that they can be operated with only a single hand of the user or has made their use incompatible with a full-sized QWERTY keyboard.

('963 patent at 1:56-59.)

> Moreover, the size of the standard QWERTY keyboard, which can have in excess of 100 keys, often limits its versatility and utility as an input device.

('963 patent at 1:64-66.)

20. The claims of the '963 patent do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the patent in suit recite inventive concepts that are deeply rooted in computerized data input and data processing. They offer technology that overcomes problems specifically arising out of how to maximize efficiency and versatility associated with entering data into a small profile data input device.

21. In addition, the claims of the patent in suit recite inventive concepts that improve the functioning of electronic data input devices catalogs, particularly as they recite a combination of controls by which a user can dynamically generate user-specific data input interfaces for the devices.

22. Moreover, the claims of the '963 patent recite inventive concepts that are not merely routine or a conventional use of computer technology or transaction processing. Instead,

COMPLAINT FOR PATENT INFRINGEMENT

6

1   the patented inventions disclosed in the patent in suit provide a new and novel solution to
2   specific problems related to automating and customizing the process of entering data into small
3   profile input devices by dynamically utilizing user specified control combinations. The claims of
4   the patent in suit thus specify how interfaces for entering user data are manipulated to yield a
5   desired result.

6   23. And finally, the patented inventions disclosed in the patent in suit do not preempt
7   all the ways that user-specific interface selections may be used to improve entering data into
8   small profile input devices, nor does the patent in suit preempt a well-known or prior art
9   technology, such as a standard QWERTY keyboard.

10  24. Accordingly, the claims in the '963 patent recite a combination of elements
11  sufficient to ensure that the claims, in substance and in practice, amount to significantly more
12  than a patent-ineligible abstract idea.

**COUNT I - INFRINGEMENT OF U.S. PATENT NO. 6,703,963**

14  25. The allegations set forth in the foregoing paragraphs are incorporated herein by
15  reference.

16  26. On March 9, 2004, the '963 patent was duly and legally issued by the United
17  States Patent and Trademark Office under the title "Universal Keyboard."

18  27. Princeps is the assignee and owner of the right, title and interest in and to the '963
19  patent, including the right to assert all causes of action arising under said patent and the right to
20  any remedies for infringement of it.

21  28. Upon information and belief, Defendants have directly infringed and continue to
22  directly infringe at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent under 35 U.S.C. § 271(a)
23  by making, using, selling, offering to sell and/or importing information input devices such as
24  Asus phones with proprietary and/or third-party apps utilizing keyboard functionalities (e.g., via
25  the ZenUI keyboard) and an operating system such as the Android operating system (the
26  "Accused Instrumentalities"), as set forth in detail in the attached preliminary and exemplary
27  claim charts provided in Exhibit A-1. (*See* Princeps' Claim Chart for claims 1, 2, 3, 9, 12 and 60
28  of the '963 patent, Ex. A-1.)

COMPLAINT FOR PATENT INFRINGEMENT

7

29. The Accused Instrumentalities infringed and continue to infringe claims 1, 2, 3, 9, 12 and 60 of the '963 patent during the pendency of the '963 patent.

30. Asus was made aware of the '963 patent and its infringement thereof at least as early as the filing of this Complaint.

31. Users in California and elsewhere in the United States have used and interacted with Defendants' systems as recited in claims 1, 2, 3, 9, 12 and 60 of the '963 patent.

32. Upon information and belief, since at least the time of receiving this Complaint, Asus has induced and continues to induce others to infringe at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Asus's partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent.

33. Asus's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing instructional materials and/or services related to the Accused Instrumentalities. On information and belief, Asus has engaged in such actions with specific intent to cause infringement and with willful blindness to the resulting infringement because Asus has had actual knowledge of the '963 patent and that its acts were inducing infringement of the '963 patent since at least the time of receiving this Complaint.

34. Upon information and belief, Asus is liable as a contributory infringer to at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States input device technology, such as the Asus ZenFone series devices, and proprietary and/or third-party apps utilizing keyboard input interfaces (e.g., the ZenUI keyboard) which are especially made or adapted for use in an infringement of the '963 patent. The Accused Instrumentalities are material components for use in practicing the '963 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

35. On information and belief, collective Defendant Asus is a for-profit organization

COMPLAINT FOR PATENT INFRINGEMENT

8

with revenues of approximately $428 billion U.S.D. per year. Moreover, Defendant Asus, including their employees and/or agents, make, use, sell, offer to sell, import, provide and cause to be used the Accused Instrumentalities for Defendants' customers, leading to direct and indirect revenues and profit. As one example of indirect profit, entities such as Defendants will frequently offer the Accused Instrumentalities at reduced pricing as an inducement to attract select categories of customers, such as students, who then purchase additional products or services. On information and belief, without the availability of infringing tools such as the Accused Instrumentalities, Defendants would be at a disadvantage in the marketplace and would generate less revenue overall.

36. On information and belief, since at least the time it received notice by this Complaint, Asus's infringement has been and continues to be willful.

37. Princeps has been harmed by Asus's infringing activities.

38. Princeps reserves the right to modify its infringement theories as discovery progresses in this case. It shall not be estopped for purposes of its infringement contentions or its claim constructions by the claim charts it provides with this Complaint. Princeps intends the claim chart (Exhibit A-1) for the '963 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure. The claim chart is not Princeps's preliminary or final infringement contentions or preliminary or final claim construction positions.

## JURY DEMAND

39. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

40. WHEREFORE, Plaintiff Princeps demands judgment for itself and against the Defendants as follows:

    A. An adjudication that the Defendants have infringed the '963 patent;

    B. An award of damages to be paid by Defendants adequate to compensate Plaintiff for the Defendants' past infringement of the '963 patent, and any continuing or future infringement through the date such judgment is entered, including interest,

costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorneys' fees; and

D. An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.

Dated: July 26, 2019                    Respectfully submitted,

                                        LAW OFFICES OF SETH W. WIENER


                                         /s/Seth W. Wiener
                                        Seth W. Wiener
                                        California State Bar No. 203747
                                        609 Karina Court
                                        San Ramon, California 94582
                                        Telephone: (925) 487-5607
                                        Email: seth@sethwienerlaw.com


                                        DEVLIN LAW FIRM LLC

                                        Timothy Devlin (*pro hac vice* to be filed)
                                        Patrick R. Delaney (*pro hac vice* to be filed)
                                        1526 Gilpin Avenue
                                        Wilmington, Delaware 19806
                                        Telephone: (302) 449-9010
                                        Facsimile: (302) 353-4251
                                        Email:
                                        tdevlin@devlinlawfirm.com
                                        pdelaney@devlinlawfirm.com

                                        *Attorneys for Plaintiff,*
                                        *Princeps Interface Technologies LLC*

COMPLAINT FOR PATENT INFRINGEMENT
10

1 **DEMAND FOR JURY TRIAL**

2 Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Rule 3-6 of the Civil

3 Local Rules, Princeps demands a jury trial on all issues so triable.

5 Dated: July 26, 2019                Respectfully submitted,

                                      LAW OFFICES OF SETH W. WIENER

                                      /s/Seth W. Wiener
                                      Seth W. Wiener
                                      California State Bar No. 203747
                                      609 Karina Court
                                      San Ramon, California 94582
                                      Telephone: (925) 487-5607
                                      Email: seth@sethwienerlaw.com


                                      DEVLIN LAW FIRM LLC

                                      Timothy Devlin (*pro hac vice* to be filed)
                                      Patrick R. Delaney (*pro hac vice* to be filed)
                                      1526 Gilpin Avenue
                                      Wilmington, Delaware 19806
                                      Telephone: (302) 449-9010
                                      Facsimile: (302) 353-4251
                                      Email:
                                      tdevlin@devlinlawfirm.com
                                      pdelaney@devlinlawfirm.com

                                      *Attorneys for Plaintiff,*
                                      *Princeps Interface Technologies LLC*

COMPLAINT FOR PATENT INFRINGEMENT
11