# EXHIBIT G

NOV. 18. 2003  11:29AM   L▸  312 616 5700

#404②ample
NO. 6173   P.

PATENT
Attorney Docket No. 219152

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Timothy B. Higginson

Application No. 10/247,065

Filed:  09/19/2002

For:   UNIVERSAL KEYBOARD

Art Unit: 2635

Examiner: Hung Q. Dang

RECEIVED
CENTRAL FAX CENTER

NOV 18 2003

OFFICIAL

RESPONSE TO OFFICE ACTION

Mail Stop
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

In response to the Office Action dated June 20, 2003, please enter the following amendments and consider the following remarks.  Allowance of the now pending claims is requested.

| CERTIFICATE OF MAILING OR TRANSMISSION UNDER 37 CFR 1.8 | | |
|---|---|---|
| I hereby certify that this Response to Office Action and all accompanying documents are, on the date indicated below, ☐ being deposited with the United States Postal Service as first class mail in an envelope addressed to: Mail Stop    , Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450, or ☒ being facsimile transmitted to the U.S. Patent and Trademark Office, Attention: Examiner Dang, Art Unit 2635, Facsimile Number (703) 872-9306. | | |
| Name (Print/Type) | Alberto Grageda | |
| Signature | Alberto Grageda       Date | November 18, 2003 |

NOV. 18. 2003  11:29AM   Lv. 312 616 5700                              NO. 6173   P. 4

In re Appln. of Timothy B. Higginson
Application No. 10/247,065

## CLAIM AMENDMENTS

1.      (Currently amended)  An information input device, comprising:

a functional mode control for selecting a first functional mode which defines a mode of operation of multiple functional modes of operation of supported by the input device;

a domain control for selecting one or more of multiple domain levels within the first functional mode with wherein each domain level containing is associated with a set of domain-level values;

a plurality of programmable input keys having a domain-level value assigned to the programmable input keys for, separate and distinct from the domain control, assigned to the set of domain-level values associated with a selected each domain level and functional mode, wherein the value assigned to each programmable input key within a domain-level controls the assigned to a domain-level value is associated with a signal, representative of the domain-level value, transmitted by the input device in response to actuation of the programmable input key within that domain-level; and

a function-specific display to indicate indicating a domain-level value associated with a programmable each input key for a currently selected functional mode and domain level combination, wherein the input keys and domain control are simultaneously presented by the input device.

2.      (Currently amended)  The invention as in claim 1 wherein the domain-level value assigned to each programmable an input key is determined by the operation of the software associated with each functional mode.

3.      (Currently amended)  The invention as in claim 1 wherein the domain-level value assigned to each programmable associated with an input key is assignable by a user of the input device.

4.      (Currently amended)  The invention as in claim 1 further comprising a software driven functional mode wherein the a software application specifies a domain-level value for each programmable an input key.

2

In re Appln. of Timothy B. Higginson
Application No. 10/247,065

5.    (Currently amended) The invention as in claim 1 wherein the function-
specific display provides a visual indication of ~~the~~a present domain-level value for each of
the ~~programmable~~ input keys.

6.    (Currently amended) The invention as in claim 1 wherein the function-
specific display provides a visual indication of an alternative domain-level value for each of
the ~~programmable~~ input keys.

7.    (Currently amended) The invention as in claim 1 wherein each display is
associated with a single ~~programmable~~ input key to provide a visual indication of ~~the~~a present
domain-level value for ~~that programmable~~the input key.

8.    (Currently amended) The invention as in claim 1 wherein each _display
associated with a single ~~programmable~~ input key provides a visual indication of an alternative
domain-level value for ~~that programmable~~the input key.

9.    (Canceled) ~~The invention as in claim 1 wherein the function specific display
comprises a light emitting diode.~~

10.    (Canceled) ~~The invention as in claim 1 wherein each display is comprised of
an liquid crystal display.~~

~~11~~.    (Original) The invention as in claim 1 wherein each display is comprised of a
touch screen.

~~12~~.    (Currently amended) The invention as in claim 1 ~~further comprising~~ wherein
the functional mode control comprises a first set of controls for selecting ~~the~~a functional
mode _of the multiple functional modes_.

3

PAGE 5/22 * RCVD AT 11/18/2003 12:29:22 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/0 * DNIS:8729306 * CSID: * DURATION (mm-ss):05-02



In re Appln. of Timothy B. Higginson
Application No. 10/247,065

13.      (Currently amended) The invention as in claim 12 further comprising a screen associated with ~~each~~the functional mode control wherein the screen indicates ~~the~~a functionality associated with ~~a~~the functional mode control.

14.      (Currently amended) The invention as in claim 1 ~~further comprising~~wherein the domain control comprises a second set of continuously present controls for selecting the domain level within a functional mode.

15.      (Currently amended) The invention as in claim 14 further comprising a screen associated with ~~each domain-level~~the domain control wherein the screen indicates the domain-level values associated with a selectable domain-level-~~value control~~.

16.      (Original) The invention as in claim 1 further comprising a slot for an insertable electronic circuit card wherein the slot is configured in accordance with one of the standard designs used for insertable electronic circuit cards.

17.      (Original) The invention as in claim 16 wherein the insertable electronic circuit-card slot is compliant with the PCMCIA standard.

18.      (Original) The invention as in claim 1 further comprising a port configured to interface with a telephone line that is part of a public-switched telephone network (PSTN).

19.      (Original) The invention as in claim 1 further comprising a card insertion slot for receiving data from a card having data stored thereon in an information bearing medium.

20.      (Original) The invention as in claim 19 wherein the information bearing medium is a magnetic-strip encoded card.

21.      (Original) The invention as in claim 19 wherein the information bearing medium is a bar-coded encoded card.

4

In re Appln. of Timothy B. Higginson
Application No. 10/247,065

22.    (Original)  The invention as in claim 16 wherein the information bearing
medium is a biometrically encoded card.

23.    (Currently amended)  The invention as in claim 1 wherein each ~~programmable~~
input key defines an exterior hole through which a stylus can be inserted to actuate the
selected ~~programmable~~ input key.

24.    (Original)  The invention as in claim 1 further comprising an expansion slot
configured to receive a memory card.

25.    (Original)  The invention as in claim 1 further comprising a plurality of fixed
operation keys having a defined operation independent of the functionality of the input
device.

26.    (Original)  The invention as in claim 23 wherein the defined operation of a
fixed key is selected from the group consisting of: Tab, Shift, Space, Enter, Delete,
Backspace, right mouse click, left mouse click, and scroll ~~and toggle~~.

27.    (Currently amended)  The invention as in claim 1 ~~further comprising~~wherein
the functional mode control ~~comprises~~ a plurality of user interface keys for selecting the first
functional mode of the information input device.

28.    (Currently amended)  The invention as in claim 1 wherein the first functional
mode is selected from the~~a~~ group consisting of: an English alphanumeric keyboard, a non-
English alphanumeric keyboard, telephone, calculator, card reader, text editing, internet
navigation, and an application specific mode associated with the use of a particular software
application~~and a mode associated with the control of an electronic device~~.

29.    (Original)  The invention as in claim 1 further comprising a port for wirelessly
transmitting data.

5



NOV. 18. 2003  11:30AM    Lv... 312 615 5700                          NO. 6173   P. 8

In re Appln. of Timothy B. Higginson
Application No. 10/247,065

~~30.~~ 27.    (Original)  The invention as in claim ~~28~~ 27 wherein the port is an infrared port.

~~31.~~ 28.    (Currently amended)  The invention as in claim 1 further comprising a second
functional mode ~~which defines an additional mode~~ of operation of multiple functional modes
of operation ~~of~~ supported by the input device;

    wherein the domain control facilitates selecting one ~~or more~~ of multiple domain levels
within the second functional mode ~~with~~ wherein each domain level ~~containing~~ is associated
with a set of domain-level values; and

    wherein the second functional mode is selected from the group consisting of: an
English alphanumeric keyboard, a non-English alphanumeric keyboard, telephone, calculator,
card reader, text editing, internet navigation, and an application specific mode associated with
the use of a particular software application ~~and a mode associated with the control of an
electronic device.~~

~~32.~~ 29.    (Original)  The invention as in claim ~~31~~ 29 wherein the second functional mode
operates concurrently with the first functional mode.

~~31.~~ 30.    (Currently amended)  The invention as in claim 1 wherein ~~at least one of the
domain-level controls are~~ at least a portion of the domain control is located on a separate unit
from the ~~other programmable~~ input keys with the separate unit coupled to the ~~other
programmable~~ input keys.

~~32.~~ 31.    (Original)  The invention as in claim 1 wherein the information input device is
an integral component of a second device.

~~33.~~ 32.    (Original)  The invention as in claim ~~34~~ 32 wherein the second device is selected
from a group consisting of an automobile, an airplane, a lap-top computer, a PDA, a cellular
telephone and any household appliance.

~~34.~~ 33.    (Currently amended)  A multi-functional keyboard, supporting multiple
functional modes of operation, comprising:

6

In re Appln. of Timothy B. Higginson
Application No. 10/247,065

a base unit having a housing for protecting the internal components of the keyboard, and wherein the keyboard comprises comprising a first user interface associated with the base unit for controlling the functional mode of operation by assigning for specifying domain-level values associated with a set of input keys to the first user interface and a second user interface for displaying the domain-level values assigned to programmable designating one of multiple domain levels associated input keys in accordance with a selected functional mode of operation;

at least one functional mode of operation, each functional mode of operation defining one or more a domain levels and wherein each domain level contains one or more domain-level values assigned to a the set of programmable input keys; and

a processor for driving the first and second user interfaces in accordance with instructions and data specific to the a selected functional mode and domain level, and wherein the first and second user interfaces are simultaneously presented.

36
37.    (Currently amended) The invention as in claim 36 34 wherein the domain-level values assigned to the first user interface is are determined by the operation of the software associated with the functional mode of operation.

36
38.    (Currently amended) The invention as in claim 36 34 wherein the domain-level values assigned to associated with the first user interface is are assignable by a user of the keyboard.

37
39.    (Currently amended) The invention as in claim 36 34 further comprising a software driven functional mode of operation wherein the a software application specifies a domain-level value for each programmable an input key.

38
40.    (Currently amended) The invention as in claim 36 34 wherein the second user interface provides a visual indication of the present domain-level values assigned to the first user interface.

7



In re Appln. of Timothy B. Higginson
Application No. 10/247,065

~~39~~
~~41.~~    (Currently amended)  The invention as in claim ~~36~~ 34 wherein the second user interface provides a visual indication of ~~an~~ alternative domain-level values ~~assigned~~assignable to the first user interface.

~~40~~
~~42.~~    (Currently amended)  The invention as in claim ~~36~~ 34 wherein the ~~programmable~~ input keys of the first user interface each have a domain-level value assigned ~~to it within each~~ according to a domain level selected via the second interface.

~~41~~
~~43.~~    (Currently amended)  The invention as in claim ~~42~~ 40 wherein the second user interface is a display to indicate the domain-level values associated with each programmable input key.

~~42~~
~~44.~~    (Currently amended)  The invention as in claim ~~42~~ 41 wherein each display of the first user interface is associated with ~~a single programmable~~ an input key to provide a visual indication of ~~the~~a present domain-level value for each ~~programmable~~ input key.

~~43~~
~~45.~~    (Currently amended)  The invention as in claim ~~42~~ 41 wherein each display associated with ~~a single programmable~~ an input key provides a visual indication of alternative domain-level values for ~~that programmable~~the input key at alternative domain levels.

~~46.~~    (Canceled)  ~~The invention as in claim 36 wherein the second user interface comprises light emitting diodes.~~

~~47.~~    (Canceled)  ~~The invention as in claim 36 wherein the second user interface is comprised of a liquid crystal display.~~

~~44~~
~~48.~~    (Original)  The invention as in claim ~~36~~ 34 wherein the second user interface is comprised of a touch screen.



In re Appln. of Timothy B. Higginson
Application No. 10/247,065

45
~~49.~~    (Original)  The invention as in claim ~~36~~34 further comprising a slot for an
insertable electronic circuit card wherein the slot is configured in accordance with one of the
standard designs used for insertable electronic circuit cards.

46
~~50.~~    (Original)  The invention as in claim ~~49~~45 wherein the insertable electronic
circuit-card slot is compliant with the PCMCIA standard.

47
~~51.~~    (Original)  The invention as in claim ~~36~~34 further comprising a port configured
to interface with a telephone line that is part of a public-switched telephone network (PSTN).

48
~~52.~~    (Original)  The invention as in claim ~~36~~34 further comprising a card insertion
slot for receiving data from a card having data stored thereon in an information bearing
medium.

49
~~53.~~    (Original)  The invention as in claim ~~52~~48 wherein the information bearing
medium is a magnetic-strip encoded card.

50
~~54.~~    (Currently amended)  The invention as in claim ~~52~~48 wherein the information
bearing medium is a ~~bar-coded~~ encoded card.

51
~~55.~~    (Original)  The invention as in claim ~~52~~48 wherein the information bearing
medium is a biometrically encoded card.

52
~~56.~~    (Original)  The invention as in claim ~~36~~34 wherein the first user interface defines
an exterior hole through which a stylus can be inserted to actuate the selected programmable
input key.

53
~~57.~~    (Original)  The invention as in claim ~~36~~34 further comprising an expansion slot
configured to receive a memory card.

9

NOV. 18. 2003  11:31AM    L. w 312 616 5700                                    NO. 6173——P. 12

In re Appln. of Timothy B. Higginson
Application No. 10/247,065

54
58.    (Original)  The invention as in claim 36 further comprising one or more fixed operation keys having a defined operation independent of the functional mode of operation of the keyboard.

55
59.    (Currently amended)  The invention as in claim 34 wherein the defined operation of a fixed key is selected from thea group consisting of: Tab, Shift, Space, Enter, Delete, Backspace, right mouse click, left mouse click, and scroll-and toggle.

56
60.    (Currently amended)  The invention as in claim 34 further comprising a plurality of user interface keys for selecting thea functional mode of operation of the keyboard.



57
61.    (Original)  The invention as in claim 34 wherein a functional mode of operation is selected from the group consisting of: an English alphanumeric keyboard, a non-English alphanumeric keyboard, telephone, calculator, card reader, text editing, Internet navigation, and an application specific mode associated with the use of a particular software application and a mode associated with the control of an electronic device.

58
62.    (Original)  The invention as in claim 34 further comprising a port for wirelessly transmitting data.

59
63.    (Original)  The invention as in claim 62 wherein the port is an infrared port.



10

In re Appln. of Timothy B. Higginson
Application No. 10/247,065



60/
64.    (Currently amended)  A method of operating an information input device
comprising one or more functional modes of operation having ~~a domain level~~ multiple domain
levels selectable by a domain control, each domain level containing domain-level values, a
plurality of ~~programmable~~ input keys, separate and distinct from the domain control, ~~with~~
~~each programmable input key~~ having ~~a~~ domain-level values assigned ~~to it within~~
~~each~~ according to a current functional mode of operation and current domain level and a
display to indicate the domain-level values associated with ~~each of the programmable~~ input
keys, wherein the method comprises the steps of:

first selecting a functional mode of operation of the information input device;

second selecting, through the domain control, a domain level within the selected
functional mode of operation; and

actuating one or more of the ~~programmable~~ input keys, associated with domain-level
values corresponding to the domain level selected during the second selecting step, and
wherein the input keys and domain control are simultaneously presented by the input device.

11



In re Appln. of Timothy B. Higginson
Application No. 10/247,065

*ABSTRACT AMENDMENT*

Replace the Abstract with:



A multifunctional input device is disclosed herein. The input device includes a functional mode which defines the mode of operation of the input device. Each functional mode includes one or more domain levels with each domain level containing one or more domain-level values. Each domain level-value within each functional mode is assigned to one of a plurality of input keys. The domain-level value assigned to each input key controls the function of that input key within a given functionality and domain level. The multifunctional input device also includes a display to indicate the domain-level value associated with each of the input keys within a given functionality.

PAGE 14/22 * RCVD AT 11/18/2003 12:29:22 PM [Eastern Standard Time] * SVR:USPTO-EFXRF-1/0 * DNIS:9729306 * CSID: * DURATION (mm-ss):05-02



In re Appln. of Timothy B. Higginson
Application No. 10/247,065

REMARKS

The Office Action dated June 20, 2003, and the references cited therein have been
carefully considered. Claims 1-64 are presently pending. No claims currently stand allowed.
Applicant has amended the independent claims in an effort to make clear that the input
device/keyboard, and method for using such a device, supports multiple domain levels. A
particular one of the multiple domain levels is selected via a domain control that is displayed
separately/distinctly/simultaneously with input keys, and the input keys are assigned values
according to a selected domain level – a feature that is neither disclosed nor even remotely
suggested by the prior art. In view of the amendments and remarks set forth herein below,
the pending claims 1-64 are patentable over the prior art presently known to Applicant.
Accordingly, Applicant requests favorable reconsideration of the previous rejection of the
now pending claims. Please charge any fee deficiencies to Deposit Account No. 12-1216.

### Summary of the Claim Rejections

The following identifies the authority and prior art applied to the identified claims for
each rejection of the claims set forth in the Office Action dated June 20, 2003.

1.     **Sections 3-4:** Claims 1-8, 12, 13, 19, 20, 24-28, 31, 32, 34-37, 52-53, and 57-63
are rejected under Section 102(b) as being anticipated by Kohler U.S. Patent No. 4,712,105.

2.     **Sections 5-6:** Claim 11 and 48 are rejected under Section 103 (a) as being
unpatentable over Kohler in view of Huang et al. U.S. Patent 6,437,836.

3.     **Section 7:** Claims 9, 10, 46 and 47 are rejected under Section 103(a) as being
unpatentable over Kohler in view of Herz U.S. Patent 6,407,779.

4.     **Section 8** Claims 16-18, 21, 22, 49-51, 54 and 55 are rejected under 103(a) as
being unpatentable over Kohler in view of Wozniak et al. U.S. Patent 4,918,439.

5.     **Section 9.** Claims 14, 15, 33 and 64 are rejected under 103(a) as being
unpatentable over Kohler in view of Platte et al. U.S. Patent 4,728,949.

6.     **Section 10.** Claims 23 and 56 are rejected under 103(a) as being unpatentable
over Kohler in view of Grandbois U.S. Patent 6,292,283.

Applicant traverses the grounds for each and every rejection for the reasons set forth
herein below.

13



In re Appln. of Timothy B. Higginson
Application No. 10/247,065

Applicant traverses the rejection, in section 4 of the Office Action, of claims 1-8, 12, 13, 19, 20, 24-28, 31, 32, 34-37, 52-53, and 57-63 as anticipated by Kohler U.S. Patent No. 4,712,105 (the Kohler '105 patent). Applicant has taken the opportunity to refine independent claims 1 and 36 to make clear that: (1) the claimed input device/keyboard supports multiple domain levels, and (2) selection of a particular one of the multiple domain levels is supported by a domain control that is presented simultaneously with input keys -- a feature that is neither disclosed nor even remotely suggested by the prior art.

With regard to the invention recited in claims 1 and 36, the Kohler '105 patent discloses a multifunction remote control. Kohler's remote control includes a set of function selection buttons (101-105). Kohler's remote control also includes standard numerical inputs that are statically defined (i.e., their values do not change between selected functions). The Kohler '105 patent also discloses additional function-specific buttons 301-312 associated with a dot-matrix display 300. Images placed within the dot-matrix display 300 indicate functions (if any) assigned to the keys 301-312. However, Kohler neither discloses nor suggests dividing input keys associated with a particular function into a set of levels (referred to in the claims as "domains"). Since Kohler does not even disclose multiple domains within a selected function, it follows that Kohler's remote control does not disclose or suggest the recited domain control that facilitates selecting one of the multiple domain levels supported by the claimed input device/keyboard.

In summary, Applicant's invention recited in independent claims 1 and 36 recites elements relating to structural features of a multifunction input device/keyboard that are neither disclosed nor suggested by Kohler. In particular, Kohler discloses only a single level of input keys associated with a selected function of a remote control. The Kohler reference does not suggest any need/desire to have multiple levels of input key values. Kohler discloses extending the capabilities of the device by allowing a user to define new functions for buttons A 104 and B 105, rather than re-defining key values associated with a selected function by designating, through the claimed domain control, a domain level within the selected function. For at least these reasons independent claims 1 and 36 are not anticipated by the Kohler '105 patent.

Because of its similarity to the above-discussed independent claims 1 and 36, Applicant will now address the patentability of amended independent claim 64 over the

14

In re Appln. of Timothy B. Higginson
Application No. 10/247,065

Kohler '105 patent in view of the Platte '949 patent. Applicant traverses the rejection of claim
64 in **section 9** of the Office Action. Claim 64, as presently amended, is directed to a method
for operating an input device/keyboard that supports: (1) multiple domain levels, and (2)
selecting a particular one of the multiple domain levels by a domain control that is presented
separately/distinctly/simultaneously with input keys -- a feature that is neither disclosed nor
even remotely suggested by the Kohler and Platte patents.

As noted in the Office Action, the Kohler '105 patent does not disclose or suggest
multiple domain levels associated with a selected functional mode of operation for an input
device. The Platte '949 patent appears to disclose a hierarchically arranged (i.e., decision
tree-based) input key selection interface for a remote control device wherein an input key
potentially performs a second, integrally linked, role of initiating presentation of a new set of
input keys. In Platte, in response to a user selecting/activating an input key (e.g., "Play" in
FIG. 5) causing transmission of a remote control signal, the remote control device
configures/displays a new set of input key options (e.g., FIG. 6) on a user interface based
upon the previously selected input key. The new set of input keys replaces the previously
displayed input key options -- including the selected/activated input key.

While the Platte '949 patent does disclose input keys arranged in levels, the logic tree-
based level/input key selection mechanism differs substantially from the method and
apparatuses recited in claims 1, 36 and 64. Each of the claims recite input keys that are
"separate and distinct" from the domain control. Thus, selecting a domain level does not
generate an input key signal, and selecting an input key does not effect a domain level
selection. In contrast the Platte '949 patent discloses input keys (e.g., PLAY) with *integrated*
level selection functionality. Thus for at least this reason, claim 64 as well as claims 1 and 36
include at least one element that is not disclosed in the cited references.

Furthermore, in contrast to simultaneously presenting the input keys and domain
(level) control, as recited in claims 1, 36 and 64, the Platte '949 patent discloses replacing a
previously displayed set of input/level selection keys, including a selected input key that
initiated displaying a next input key level, by a new set of input keys. Thus, even in the event
that an input (e.g., PLAY) key in the Platte remote control device is considered the claimed
"domain control," the selected "domain control" disappears from the input interface when the
new set of input keys are presented on the input interface. Therefore, Platte does not disclose

15



In re Appln. of Timothy B. Higginson
Application No. 10/247,065

*simultaneously presenting the input keys and the domain control* (that selects one of multiple
domain levels) as recited in amended claim 64 as well as claims 1 and 36.

    Applicant traverses the assertion at page 8, paragraph 2 of the Office Action, that a
suggestion exists in the prior art to modify Kohler to include multiple levels of input within a
selected functional mode – as taught by Platte.  The Platte '949 patent discloses a remote
control that arranges sets of input keys into hierarchical decision tree in order to minimize the
number (e.g., six) of keys on a remote control device.  However, the Kohler patent does not
express any such need or desire to minimize the number of keys in the input device.

    Furthermore, even when combined, the teachings of Kohler and Platte do not teach or
suggest the claimed invention.  As discussed above, neither Kohler nor Platte discloses, as
recited in claim 64, *simultaneously presenting* a domain control for selecting a domain level
(assigning domain-level input values to input keys) and input keys associated with input
values specified by a selected domain level.  Instead, the Kohler remote control, as modified
by Platte, would replace the single level of input values by multiple, hierarchically arranged
levels that replace domain level selection buttons by input buttons – preventing simultaneous
presentation of domain level control and input keys.

    Applicant traverses the rejection of claims 2, 4, 37 and 39.  Applicant has reviewed
the Kohler reference, and there is no such teaching in the paragraph bridging columns 2 and 3
that:  domain-level values assigned to the input keys are driven by software associated with
the functional modes (claims 2 and 37), and a software driven functional mode specifies a
domain-level value for each input key (claims 4 and 39).  Applicant further notes that Kohler,
lacking multiple domain levels, could not reasonably disclose assigning values to input keys
according to domain level.  In the event that the rejection is not withdrawn, Applicant
specifically requests identification of the teachings of Kohler that specify such software-
driven association of values to the input keys.

    Applicant traverses the rejection of claims 3 and 38.  The term assignable refers to the
ability of a user to define a value corresponding to a key.  *See,* App. para. 34, lines 8-10.  In
contrast, the Office Action refers to the assignment of a key value by the remote control in
response to a user selecting a particular function.  Applicant has amended the claims to
clarify the claim element and distinguish between defining associations (i.e., programming an
input key) and assigning a value based upon a domain (level) selection.

In re Appln. of Timothy B. Higginson
Application No. 10/247,065

Applicant traverses the rejection of claim 5 for at least the reason that the input keys
in Kohler are not domain (level) sensitive since Kohler discloses only a single level for input
key selection. The rejection of claim 40 is traversed since Kohler does not even disclose a
second interface (that indicates a current selected level), and therefore could not disclose an
indication of the current values assigned to the first interface (the input keys/displays).

Applicant traverses the rejection of claims 6 and 41 for at least the reason that Kohler
does not even disclose domain levels. Kohler discloses mode/function selection through
buttons 101-105. However, as conceded by the Office Action with regard to claim 1, Kohler
discloses only a single level/domain. Thus, Kohler cannot possibly teach displaying
alternative domain-level values for the input keys.

Applicant traverses the rejection of claim 7 for at least the reasons set forth with
regard to claim 1 since claim 7 incorporates all elements recited therein, and in particular
claim 7 recites a domain-level specific value assigned to an input key.

Applicant traverses the rejection of claims 8 and 45 for at least the reason that Kohler
discloses alternative functional modes of operation but only a single domain within each
functional mode. Therefore, Kohler cannot possibly disclose alternative domains-level
values assigned to an input key.

Applicant traverses the rejection of claims 42-44 for at least the reason that Kohler
does not disclose multiple domains/levels for a selected function and clearly does not disclose
the recited assigning domain-level values to inputs according to a domain level designated
via the second interface that facilitates selecting a domain/level. In fact, the Kohler patent
does not even disclose the recited second interface.

Applicant traverses the rejection of claim 12 for at least the reasons set forth above for
claim 1 from which claim 12 depends.

Applicant traverses the rejection of claim 13 for at least the additional reason that
screen 300 in the Kohler patent indicates functionality associated with the buttons 301-312
(that the Office Action has previously equated with input key displays rather than functional
mode selection).

Applicant traverses the rejection of claims 25 and 58 for at least the reasons set forth
above with regard to claims 1 and 36 from which they depend.

17

In re Appln. of Timothy B. Higginson
Application No. 10/247,065

Applicant traverses the rejection of claims 26 and 59 in view of the amendment to these claims to remove the toggle element from the listed group.

Applicant traverses the rejection of claims 27 and 60 for at least the reasons set forth above with regard to claims 1 and 36 from which they depend.

Applicant traverses the rejection of claims 28, 31 and 61 in view of the amendment removing "control of an electronic device." The remaining group members comprise data input and selection interfaces.

Applicant traverses the rejection of claim 32 since Kohler discloses only a single concurrent mode of operation of the remote control device.

Applicant traverses the rejection of claims 34 and 35 since Kohler's remote control device, by definition, is not an integral (physically attached) component of another device. Rather the remote control device is physically separate to facilitate remote control of the device. In contrast, the elements in claims 34 and 35 are directed to multiple domain input interfaces for selecting options on an appliance (e.g., radio/stereo controls).

Applicant traverses the rejection of claims 19, 20, 24, 52, 53 and 57 for at least the reasons set forth above for the independent claims 1 and 36 from which they depend.

Applicant traverses the rejection of claims 29, 30, 62, and 63 for at least the reasons set forth above for the independent claims 1 and 36 from which they depend.

Applicant now turns to **section 6** of the Office Action rejecting claims 11 and 48 over Kohler in view of the Huang '836 patent. Applicant traverses the rejection of claims 11 and 48 for at least the additional reason that there is no suggestion to incorporate relatively expensive touch screen technology into a low price device such as Kohler's remote control. Applicant therefore submits that one skilled in the art would not have modified the remote control disclosed in Kohler to include considerably more complex touch screen technology.

With regard to **section 7** of the Office Action, Applicant has deleted claims 9-10 and 46-47 without prejudice.

Applicant now turns to **section 8** of the Office Action rejecting claims 16-18, 21, 22 49-51, 54 and 55 over Kohler in view of the Wozniak '439 patent. Applicant traverses the

18

In re Appln. of Timothy B. Higginson
Application No. 10/247,065

rejection of claims 16-18, 21, 22, 49-51, 54 and 55 for at least the reasons provided with
regard to claims 1 and 36 from which the claims depend. Furthermore, Applicant submits
that there is no suggestion in the prior art to modify the relatively simple, low cost remote
control disclosed in Kohler to include complex, relatively expensive special-purpose circuit
cards.

Applicant now turns to **section 9** of the Office Action rejecting claims 14, 15, 33 and
64 as unpatentable over Kohler in view of the Platte '949 patent. Applicant previously
addressed the rejection of claim 64 above (in association with the traversal of the rejection of
claims 1 and 36). Applicant traverses the rejection of claims 14, 15 and 33 for at least the
reasons set forth above with regard to claims 1, 36 and 64. Applicant adds that, with regard
to claim 14, neither Platte nor Kohler disclose a continuously present domain control that
controls selection of a domain/level within a functional mode of operation of the input
device. Furthermore, Applicant notes that, with regard to claim 33, all the input keys are on a
same unit as the domain control. Therefore for at least this additional reason the invention
recited in claim 33 is neither disclosed nor suggested by the combined teachings of Kohler
and Platte.

Turning to **section 10** of the Office Action, Applicant traverses the rejection of claims
23 and 56 over Kohler in view of the Grandbois '105 patent. In particular, the Grandbois
patent does not disclose holes through which a stylus is inserted to select a particular input
key associated with the particular hole. The stylus is used to write on the touch-sensitive
screen 22. For at least this additional reason claims 23 and 56 are patentable over the prior
art.



19

In re Appln. of Timothy B. Higginson
Application No. 10/247,065

*Conclusion*

    The application is considered in good and proper form for allowance, and the Examiner is respectfully requested to pass this application to issue. If, in the opinion of the Examiner, a telephone conference would expedite the prosecution of the subject application, the Examiner is invited to call the undersigned attorney.

                                  Respectfully submitted,

                                    Mark Joy, Reg. No. 35,362
                                    LEYDIG, VOIT & MAYER, LTD.
                                    Two Prudential Plaza, Suite 4900
                                    180 North Stetson Avenue
                                    Chicago, Illinois 60601-6780
                                    (312) 616-5600 (telephone)
                                    (312) 616-5700 (facsimile)

Date: November 18, 2003

M:\doc\pat\mj\219152-roa(11_18).doc